## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| HUMANA, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 6:21-cv-00072-CEM-DCI |
| ) | |
| v. ) | |
| ) | |
| TEVA PHARMACEUTICALS USA ) | |
| INC., TEVA NEUROSCIENCE, INC., ) | |
| ADVANCED CARE SCRIPTS, INC., ) | |
| and ASSISTRX, Inc., ) | |
| ) | |
| Defendants ) | |

### PLAINTIFF HUMANA INC.'S RENEWED MOTION TO COMPEL RESPONSE TO INTERROGATORY NO. 3 TO TEVA <u>DEFENDANTS</u>

In this dispute involving the U.S. price of its drug Copaxone, Teva refuses to produce what this Court has already determined is relevant: Canadian pricing data.  Defendants Teva Pharmaceuticals USA Inc. ("Teva USA") and Teva Neuroscience, Inc. ("Teva Neuro") (collectively "Defendants" or the "Teva Defendants") initially claimed that the information was irrelevant and consequently that any effort to produce it was too burdensome; then (and inconsistently) that they lacked access to the data; and now they still will not say whether they have even looked or asked their affiliates for the data, even though their own documents show that their senior executives had access to and responsibility for both Canadian and U.S. pricing during the relevant period.

Accordingly, Humana renews its motion under Fed. R. Civ. P. 37(a) to compel the Teva Defendants to respond sufficiently to Interrogatory No. 3 from Humana's Second Set of Interrogatories, dated October 28, 2022 (attached as Exhibit A), as narrowed at the hearing on December 21, 2022, and to provide responsive pricing information for the United States and Canada.

Humana's Interrogatory No. 3 seeks "The Copaxone List Price and Copaxone Net Price for each month and year of the Relevant Period, reported separately for each Product Type in the following countries: United States, Canada, Australia, Germany, France, Italy, Spain, and United Kingdom." (Exhibit A, at 6.)  On November 28, 2022, the Teva Defendants answered that they would provide responsive information as to the United States but objected as to foreign countries on grounds of breadth, burden, disproportion, and relevance.  (Exhibit B, Teva Defendants' Response to Interrogatory No. 3, dated November 28, 2022, at 15-16.)  The parties' counsel met and conferred on November 30, 2022, after which Defendants' counsel represented that "complying with the request . . . would be unduly burdensome" because "to the extent the pricing data for Copaxone in foreign countries exists in the format you have requested, we understand that such information is located on separate servers, and would require separate inquires in different systems than those housing U.S. data." (ECF 170-2, Nov. 30, 2022, Email from J. Stern.)

On December 6, 2022, Humana moved to compel the Teva Defendants to answer Interrogatory No. 3 for all requested countries. (ECF 162.) The Teva

Defendants again opposed on grounds of relevance, as well as burden and proportionality, because "[i]f foreign pricing data exists in the format requested, Teva understands it is housed separately, requiring separate inquiries on separate systems." (ECF 170, at 2.)  Defendants provided neither an affidavit nor other information to support their representation that accessing the information from a separate server would be burdensome.

The Court scheduled a hearing on the motion for December 21, 2022. In advance of the hearing, the parties' counsel continued to meet and confer. On December 15, 2022, Humana offered a compromise to resolve Defendants' burden objection by reducing the number of foreign countries to those that the Teva Defendants believed would be least burdensome to collect responsive information. (ECF 180-1, Emails Dec. 12, 2022, through December 19, 2022, at 16.)  On December 16, 2022, Defendants' counsel informed Humana for the first time that they had "confirmed that [Defendants Teva USA and Teva Neuro] do not possess foreign pricing data." (*Id.* at 14 (emphasis in original).)  During a call that same day, Defendants' counsel explained that the requested foreign pricing information is stored in systems that belong to non-party Teva affiliates. Teva's counsel would not say whether the Teva Defendants had requested the pricing information from those affiliates. On December 17, 2022, Humana's counsel directed Defendants to documents and testimony suggesting that the Teva Defendants do have access to foreign pricing information, particularly with respect to Canada. (*Id.* at 9-10.) On December 19, 2022, Humana further offered

to limit Interrogatory No. 3 to the United States and Canada. (*Id.* at 4-5.)
Defendants rejected that compromise offer. (*Id.* at 4.)

On December 21, 2022, the Court held a hearing on the motion, during
which it ordered further briefing to address the issues raised at the hearing. (ECF
184.) The parties further met and conferred by phone on December 27, 2022,
during which Humana's counsel asked for more information about with which
Teva entity the Canadian pricing information resides; on what type of system the
information is stored; whether that system is connected with the United States;
and how difficult it is to access the foreign information within those systems.
Teva's counsel did not have answers to those questions.

## **Memorandum of Law**

Federal Rule of Civil Procedure 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that
> is relevant to any party's claim or defense and proportional to the
> needs of the case, considering the importance of the issues at stake in
> the action, the amount in controversy, the parties' relative access to
> relevant information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or expense
> of the proposed discovery outweighs its likely benefit. Information
> within this scope of discovery need not be admissible in evidence to
> be discoverable.

Fed. R. Civ. P. 26(b)(1).

## I.   **Copaxone Prices in Canada Are Relevant to Humana's Damages**

The Court indicated during the December 21, 2022, hearing that Canadian
prices for Copaxone during the underlying period are relevant to Humana's
claims.  Humana will not belabor the point but will simply note for the record

that as reflected in *In re Vitamins*, foreign pricing information is relevant as a benchmark or point of comparison for U.S. damages claims. *In re Vitamins Antitrust Litig.*, No. 99–197TFH, 2001 WL 1049433, at \*12 (D.D.C. June 20, 2001) (European data relevant to U.S. damages). Defendants' objection that there may be other forces to explain differences between U.S. and foreign prices goes to the weight to be assigned the requested information rather than its relevance or admissibility.

## II. Copaxone Prices in Canada Are Within the Teva Defendants' Possession, Custody, or Control

The Teva Defendants have not shown that Canadian prices are outside their "possession, custody, or control." After briefing on Humana's motion to compel had closed, Teva's counsel raised for the first time that the Teva Defendants believe they do not have "control" over the basic data requested here: the price of Copaxone in Canada during the relevant period. This contention is implausible for a global, integrated pharmaceutical company; it is belied by Defendants' own documents, which show that Defendants had access to such information; and it is untenable under this Circuit's authority, which instructs that control over documents means more than simple possession.

"Whether documents are in a part[y's] control under Rule 34 is broadly construed." *Costa v. Kerzner Intern. Resorts, Inc.,* 277 F.R.D. 468, 470-71 (S.D. Fla. 2011). "Control is defined not only as possession, but as the legal right to obtain documents requested upon demand." *Grayson v. No Labels, Inc.*, No. 6:20-cv-1824-PGB-LRH, 2021 WL 8199902, at \*2 (M.D. Fla. Dec. 29, 2021)

(citing *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)). "'Control,' therefore, does not require that a party have legal ownership or actual physical possession of the documents at issue; indeed, documents have been considered to be under a party's control (for discovery purposes) when that party has the 'right, authority, or practical ability to obtain the materials sought on demand.'" *Costa*, 277 F.R.D. at 471 (citing *Desoto Health & Rehab, L.L.C. v. Philadelphia Indem. Ins. Co.*, No. 2:09-cv-599-FtM-99SPC, 2010 WL 4853891, at *3 (M.D. Fla. Nov. 22, 2010) (internal quotations and citations omitted)). This is in keeping with the tenet that "[t]he Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Lorenzano v. Sys., Inc.*, No: 6:17-cv-422-Orl-37DCI, 2018 WL 3827635, at * 1 (M.D. Fla. Jan. 24, 2018) (Irick, Mag. J.) (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)).

Further, courts in this Circuit regularly construe a party to have sufficient access to its parent, subsidiary, and sibling corporations' documents to require production of documents requested therefrom. "Significantly, under this principle, discovery can be sought from one corporation regarding materials that are in the physical possession of another, affiliated corporation." *Batista v. Nissan N. Am., Inc.*, No. 14-24728-Civ-Scola, 2015 WL 10550409, at *2 (S.D. Fla. Dec. 8, 2015) (requiring production of documents from parent and sister corporations) (quoting *Costa*, 277 F.R.D. at 474 n.1). "Courts look to three factors to determine control: (1) the corporate structure of the party and non-party, (2) the non-party's connection to the transaction at issue, and (3) the

6

degree to which the non-party benefits from the outcome of the litigation." *Id.* (citing Costa, 277 F.R.D. at 468); *accord Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1201 (11th Cir. 2016) (citing *Costa* approvingly). The Eleventh Circuit has made clear that a party has sufficient "control" over the documents of a nonparty corporate affiliate where the party has the ability to "obtain the documents requested upon demand," which is evidenced by instances where the entities "have actually shared responsive information and documents in the normal course of their business dealings." *Sergeeva*, 834 F.3d at 1201 (citing *SeaRock*, 736 F.2d at 653-54).

### a. Copaxone Prices Were Set According to a Global Pricing Strategy to Which the Teva Defendants Contributed and Received Global Pricing Information in the Process

The Teva Defendants have not yet articulated whether the corporate affiliate they believe has the relevant Canadian pricing data is a parent company or corporate sibling.  This ultimately should not matter, as documents produced by Defendants in *this* litigation make clear that Canadian pricing data has "actually [been] shared [with them] . . . in the normal course of their business dealings." *See Sergeeva*, 834 F.3d at 1201 (addressing affiliated companies without reference to specific corporate familial relationship).

Documents produced by the Teva Defendants show that Copaxone prices were set according to a global pricing strategy, to which the Teva Defendants contributed. For example, Exhibit C (TEVA_HUM_PAP_01498889) is ██████

████████████████████████████████████

██████████████████ which outlines ██████████████████

███████████████████████████ ██████████████████

████████████████████████ (*Id.* at 20.)



    As part of the development of that global pricing strategy, the leadership

team of Defendants Teva USA and Teva Neuro received documents outlining

prices for markets all over the world, including the United States, Canada,

Australia, Germany, France, Italy, Spain, and the United Kingdom. Exhibit D

(TEVA_HUM_PAP_00115847–5909) is ██████████████████

███████████████████████████

███████████████████████ █ ████████████████████████████

███████, which discusses ██████████████████████████████:



(*Id.* at 35.) That document also includes ████████████████████

███████████:

---

[1] *See* Exhibit E (Teva Org. Charts), at TEVA_HUM_PAP_000020.
[2] ██████████████████████████████████████████████████████ (Exhibit D, at 53−55.)



(*Id.* at 52. *See also* Exhibit F, TEVA_HUM_PAP_00077616, ███████████

████████████████████████, at TEVA_HUM_PAP_00077649

(showing ██████████████████████████████████

████████████); Exhibit G, TEVA_HUM_PAP_00548213, ████████████

███████████████, at 12 (████████████████████████

██████████); Exhibit H, TEVA_HUM_PAP_00602835, ██████████

████████████████████████████, at 3 (█████████████████

████████████████████████████████).) Attached as

Appendix A is a table describing other example documents from Defendants' files showing Teva's global pricing strategy.

Because Copaxone's price was set in accordance with a global strategy to which the Teva Defendants contributed, Defendants had access to pricing on a global basis, including pricing from Canada. *See Sergeeva*, 834 F.3d at 1201.

### b. The Teva Defendants Control Documents from "Teva North America"

Former employees of the Teva Defendants testified that they had responsibility over Copaxone sales in both the United States and Canada in their roles as senior managers overseeing the "Teva North America" region. Mr. Larry Downey, who was identified as a former employee of Teva on Defendants' Rule 26(a)(1) disclosures (Exhibit I), and from whose files Defendants produced over 15,000 documents, testified that ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████ (Exhibit J, Excerpt of Downey DOJ Deposition, 27:15-21, 61:6-62:22; Exhibit K, TEVA_HUM_PAP_00952919 (██████████████████████

███████████████████████████████████████████

████████████████████.) Mr. Brendan O'Grady, from whose files Defendants produced over 7,900 documents, testified that ██████████████████████

████████████████████████████████████████████

██████████████ (Exhibit L, Excerpt of O'Grady DOJ Deposition, 34:18-35:11.)

The organizational charts produced by the Teva Defendants also show that



(Exhibit E (Teva Org Charts), at

TEVA_HUM_PAP_00000116 (showing ██████████████████████

████████████████████████████); at

TEVA_HUM_PAP_000021 (showing ████████████████████

████████████████████); at TEVA_HUM_PAP_000031

(████████████); at TEVA_HUM_PAP 000038 (█████); at

TEVA_HUM_PAP_00000076 (showing ████████████████

████████████████); at

TEVA_HUM_PAP_00000101 (showing ████████████████

████████████████████████████████

██████████████).

Another email from Mr. Downey in February 2008

(TEVA_HUM_PAP_00729458), ██████████████████████

████████████████████████████, shows that ██

████████████████████████:



Additionally, it appears that Defendant Teva Neuro was the corporate parent of Teva Neuroscience Canada based on documents showing the reporting of Teva Neuroscience Canada revenue and expenses on financial statements or reports of Defendant Teva Neuro. For example, TEVA_HUM_PAP_00080376 (highlighting in yellow added) is ███████████████████████████ ████████████████████████████████████████ ███████



TEVA_HUM_PAP_00135106 (highlighting in yellow added) is

TEVA_HUM_PAP_01607421 (highlighting in yellow added) is

█████████████████████████████████████████████████████████

███████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

At a minimum, there does not appear to be any formal separation between Teva Neuro and Teva North America. Mr. Sheehy, who testified as Defendants' Rule 30(b)(6) corporate designee, testified that ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ (Exhibit M, Excerpt of Sheehy DOJ Deposition at 41:2-43:6.)

Given the corporate reporting structure of Teva in North America, it is not credible that the Teva executives did not have the "practical ability" to access Canadian prices in the course of their regular business activities when they oversaw a Canadian organization whose finances were considered collectively with Defendant Teva Neuro.  In fact, numerous documents show that Defendants did have access to Teva Canada financial information, including pricing. For example, ████████████████████████████████████████████ ████████████████████████████████████████████████████████

███████████. (Exhibit N, TEVA_HUM_PAP_00074804–4868.)  As another

example, █████████████████████████████████████████████

██████████▌██████████████████████████████████████████

███████████████████████████████ (Exhibit P,

TEVA_HUM_PAP_00128601–8615.)



(*Id.* at TEVA_HUM_PAP_00128604.)

---

[3] *See* Exhibit O, Excerpt of Hiett DOJ Deposition at 10:3-14; 13:14-14:5; Exhibit E (Teva
Org Charts), at TEVA_HUM_PAP_00000118.

Attached as Appendix B is a table describing other documents in Defendants' possession that contain financial information for Teva Canada, and attached as Appendix C is a further non-exhaustive list of 76 additional documents in Defendants' possession containing financial information for Teva Canada.

### c. Defendants Had the Practical Ability to Obtain Canadian Prices in the Normal Course of Their Business

Defendants' ability to "obtain the documents requested upon demand," is further evidenced by an instance in which Defendants and their corporate siblings "actually shared responsive information and documents in the normal course of their business dealings." *Sergeeva*, 834 F.3d at 1201 (citing *SeaRock*, 736 F.2d at 653-54). Defendants produced ███████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████ (Exhibit Q, TEVA_HUM_PAP_01898461.) █████████████████████████████ ████████████████████ (Exhibit R, TEVA_HUM_PAP_01898457.) This file demonstrates that the Teva Defendants have the "practical ability to obtain" information about Copaxone prices in other markets upon request. *Sergeeva*, 834 F.3d at 1201 (quoting *Costa*, 277 F.R.D. at 470-71)). Under *Sergeeva*'s guidance, that is sufficient.

### d. Production Is Required Under the Three-Factor Test Set Forth in *Costa* and *Batista*

Production is required here under the three-factor test set forth in *Costa* and *Batista*. First, "where [as here] the party and its related nonparty affiliate are owned by the same" entity, there is sufficient control to require production of materials held by the nonparty affiliate. *Costa*, 277 F.R.D. at 472; *Batista*, 2015 WL 10550409, at *2 (common ownership is the primary focus). Where the companies are "united in a shared business purpose" and have financial and operational interactions, the first factor is all the more supportive of compelling discovery. *Costa*, 277 F.R.D. at 472. Any corporate sibling the Teva Defendants identify will ultimately be owned by Teva Pharmaceutical Industries Ltd. and united in Teva's business purpose. Mr. Downey's emails show that as the head of Teva North America, he was regularly involved in discussions about global Copaxone brand strategy for the United States, Canada, and Europe (Appendix A) and that he and other Teva Defendant employees regularly received information about income and expenses for Teva Canada commingled with the finances for Teva's U.S. operations (Appendix B; Appendix C).

Under the second factor (connection to the transaction at issue), Mr. Downey's and Mr. O'Grady's oversight of both Canadian and U.S. affiliates for Copaxone strongly suggests a "connection" between the relevant Teva entities sufficient to render it "inconceivable that defendant would not have access to [the data] and the ability to obtain them for its usual business." *Costa*, 277 F.R.D. at 473 (quotation marks omitted). And the email in Exhibit R shows that

Defendants did in fact have access to foreign pricing information on demand. Moreover, the court in *Batista* took a broad view of what "transaction" was relevant for the second factor, 2015 WL 10550409, at *2-3, and this Court should as well—a Canadian affiliate tasked with pricing Copaxone is related to the overall project of producing and selling Copaxone around the world at a profit.

Finally, under the third factor (the non-party's benefit from the litigation), Teva's obstruction has impeded a fuller view, but it is reasonable to presume that the entire Teva family, and certainly the Defendants' parents, benefit from the outcome of the litigation. As in *Costa*, the parent company of both the Teva Defendants and Teva Canada, Teva Pharmaceutical Industries Ltd. (and by extension its subsidiaries), "has a direct financial interest in the outcome of the litigation, as it may ultimately be responsible for damages . . . ." *Costa*, 277 F.R.D. at 473.  The United States was the largest global market for Copaxone, and its importance was shown through a prominent role in the setting of Teva's Global Pricing Strategy. This potential liability for damages was found sufficient on its own in *Batista*. *See Batista*, 2015 WL 10550409, at *3.  Because the parent corporation of both the Teva Defendants and Teva Canada has a direct financial stake in the litigation that may impact Teva's Canadian operations, this suffices to find "control" under the *Costa* test.

In sum: any corporate affiliate of Defendants that maintains Canadian pricing data—whether a sibling or parent company—is sufficiently connected to the Defendants to fall within the broad scope of Rule 34(a)'s conception of

"control."  Mr. Downey and Mr. O'Grady's supervisory roles with Defendants and Canadian affiliates, along with documents produced by Defendants reflecting snippets of the Canadian pricing data Humana now requests, confirm that Defendants have the "practical ability" to obtain the data Humana seeks.  The Court should not allow unreasonable reliance on corporate structural formality to trump the clear access Defendants have to the relatively modest request for data about the *price* Teva charged for its marquee drug in a major country. The Teva Defendants cannot and should not be able to deny access to Canadian pricing information solely for purposes of a strategic advantage in this litigation. *See S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 472 (S.D.N.Y. 2000) ("where 'agent-subsidiary can secure documents of the principal-parent to meet its own business needs . . . the courts will not permit the agent-subsidiary to deny control for purposes of discovery'") (quoting *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 141 (3d Cir. 1988)).

### e. Defendants Can Answer the Interrogatory Even Within Documents Likely in Their Possession

At the December 21 hearing, the Court asked whether it could compel the Teva Defendants to respond if Defendants showed that certain databases were not within their possession, custody, or control.  The answer is yes, because Defendants *already* possesses *their own* custodial documents and central files beyond such databases that likely contain responsive information.[4]  It is not only

---

[4] Humana requested such documents in its Request for Production No. 57, which sought production of all documents relied upon in answering Humana's interrogatories.

plausible but entirely likely that the Teva Defendants have unproduced materials related to Canadian pricing in the custodial files of Mr. Downey, Mr. O'Grady, Mr. Sheehy, Mr. Hassler, Ms. Hiett, and others, but did not search or produce that information in view of their burden and relevance objections.  Defendants should therefore be compelled to search for, produce, and answer the interrogatory based on responsive information even in the unlikely event that they cannot obtain responsive documents from their affiliates.

### III.   Defendants Have Not Shown That It Would Be Unduly Burdensome to Provide Copaxone Prices in Canada

Finally, Defendants have not shown why it would be burdensome to produce a list of Copaxone prices in Canada. Claims of overbreadth and undue burden should be "supported by specific information demonstrating how the request is overly broad and unduly burdensome." *Zurich Am. Ins. Co. v. Hardin*, No.: 8:14-cv-775-T-23AAS, 2019 WL 3082608, at *5 (M.D. Fla. July 15, 2019) (citation omitted). "A party seeking to avoid discovery based on undue burden must present evidence, such as an affidavit, showing that it would be unduly burdensome to comply with the discovery request at issue." *Allstate Ins. Co. v. Auto Glass Am., LLC*, No. 6:18-cv-2184-Orl-41LRH, 2020 WL 6882166, at *3 (M.D. Fla. Oct. 16, 2020*); see also Eastwood Enters., LLC v. Farha*, No. 8:07-cv-1940-T-33EAJ, 2010 WL 11508180, at *4 (M.D. Fla. Apr. 26, 2010) ("Claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome."). Further, that party must also "show that the burden or expense is unreasonable

in light of the benefits to be secured from the discovery." *Border Collie Rescue, Inc. v. Ryan*, No. 304CV568J32HTS, 2005 WL 662724, at *2 (Mar. 15, 2005) (citation omitted).

Teva has not stated or described any sort of burden in accessing the Canadian pricing information directly from their Canadian affiliate. As of the date of this filing, Humana is not aware that Defendants have even attempted to request the information from their Canadian affiliate. Moreover, the fact that some Canadian pricing data exists in Defendants' files is evidence (1) that they have the practical ability to obtain that information, and also (2) that they may have more Canadian pricing data within the files already in their possession.

Teva cannot ignore the implications of documents showing that it had practical access to Canadian pricing in the normal course of its business. But even if it were to convince the Court that it cannot access those files through its Canadian affiliate now, Teva still must answer the interrogatory to the best of its ability using information to which it does have access. Yet Teva has represented that it has made no effort to search its own custodial files for Canadian pricing data—not even a targeted search of Mr. Downey's files—and has not articulated or quantified to Humana or the Court (by affidavit or otherwise) the purported burden of doing so. Teva has fallen far short of showing that the burden of accessing the Canadian pricing information is so onerous as to be unreasonable. Teva cannot determine its burden without making any effort to investigate the records in its actual, physical possession.

Further, to the unlikely extent that Teva's parent or other affiliates deny Teva access to information that would reduce the burden of answering the Interrogatory, that should not be held against Humana. If the Teva Defendants' parent and corporate family aggravate and obstruct discovery, then the Teva Defendants rather than Humana should bear the burden of that choice. In that event, the Teva Defendants should be compelled to search their custodial files for Canadian price information even if doing so would be more burdensome than simply accessing prices in an affiliate's database.

*     *     *

Humana therefore respectfully requests that the Court grant this motion and compel the Teva Defendants to answer Interrogatory No. 3 with respect to Canadian prices.

## LOCAL RULE 3.01(G) CERTIFICATION

In accordance with Local Rule 3.01(g) and paragraph 8 of the Court's Standing Order on Discovery Motions, counsel for Humana certifies that it met and conferred with Defendants Teva USA and Teva Neuro in person after the hearing on December 21, 2022, and by phone on December 27, 2022, but the Parties have not been able to resolve the dispute.

Dated: December 27, 2022                    Respectfully submitted,

                                      /s/   *Benjamin E. Waldin*

                                      Dennis P. Waggoner
Florida Bar No.: 0509426
HILL WARD & HENDERSON, P.A.
101 East Kennedy Boulevard
Bank of America Plaza, Suite 3700
Tampa, Florida 33601-2231
Telephone: (813) 221-3900
Email: dennis.waggoner@hwhlaw.com

Scott C. Solberg (*pro hac vice*)
James W. Joseph (*pro hac vice*)
Benjamin E. Waldin (*pro hac vice*)
Daniel D. Birk (*pro hac vice*)
Sarah H. Catalano (*pro hac vice*)
Gregory M. Schweizer (*pro hac vice*)
Margaret G. Houseknecht (*pro hac vice*)
EIMER STAHL LLP
224 South Michigan Ave., Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Email: ssolberg@eimerstahl.com
      jjoseph@eimerstahl.com
      bwaldin@eimerstahl.com
      dbirk@eimerstahl.com
      scatalano@eimerstahl.com
      gschweizer@eimerstahl.com
      mhouseknecht@eimerstahl.com

*Attorneys for Plaintiff Humana Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2022, I electronically filed the

foregoing with the Clerk of the Court through the CM/ECF system, which will

send a notice of electronic filing to counsel for all parties of record.


/s/   *Benjamin E. Waldin*